
O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON RIOS, JR., | NO. CV 11-00171-MAN |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | AND ORDER |
| Defendant. | |

Plaintiff filed a Complaint on January 6, 2011, seeking review of the denial of plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). On February 14, 2011, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on September 16, 2011, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that his decision be affirmed or, alternatively, remanded for further administrative proceedings.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On June 27, 2007, plaintiff protectively filed an application for a period of disability and DIB. (Administrative Record ("A.R.") 13.) On September 25, 2007, plaintiff protectively filed an application for SSI. (*Id.*) Plaintiff, who was born on April 30, 1971 (A.R. 20),[1] claims to have been disabled since July 14, 2006 (A.R. 13), due to lower back and right foot problems (A.R. 56, 60).

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 13, 56-64), plaintiff requested a hearing (A.R. 65). On December 4, 2007, plaintiff, who was represented by Pamela Noblitt, "a non-attorney," appeared and testified at a hearing before Administrative Law Judge Maxine R. Benmour (the "ALJ"). (A.R. 13, 22-52.) Vocational expert Heidi Paul also testified. (*Id.*) On January 12, 2009, the ALJ denied plaintiff's claim (A.R. 13-21), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-4). That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2011. (A.R. 15.) The ALJ also found that plaintiff has not engaged in substantial gainful activity since July 14, 2006, the alleged onset date. (*Id.*) The ALJ

---

[1] On the alleged disability onset date, plaintiff was 35 years old, which is defined as a younger individual. (*Id.; citing* 20 C.F.R. §§ 404.1563, 416.963.)

determined that plaintiff has the severe impairments of "low back pain and right leg pain." (*Id.*) She also determined that plaintiff's "mental impairment of depressive disorder is not a severe impairment." (*Id.*) The ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926). (A.R. 16.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform less than the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). Specifically, the ALJ found that plaintiff:

> can lift no more than 10 pounds. He can sit 6 hours and stand/walk 2 hours each in an 8-hour workday. He must change positions for 30 seconds every half hour due to back pain. [Plaintiff] can occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl, but can never climb ladders, ropes, or scaffolds.

(A.R. 17.)

The ALJ concluded that plaintiff is unable to perform his past relevant work.[2] (A.R. 19-20.) However, based on her RFC assessment and

---

[2] In her decision, the ALJ noted that the vocational expert found that plaintiff has past relevant work as a truck driver, assistant supervisor, "order picker," material handler, and cashier II. (A.R. 19.)

1  after having considered plaintiff's age, education,[3] work experience, and
2  the testimony of the vocational expert, the ALJ found that jobs exist in
3  the national economy that plaintiff could perform, including: "order
4  clerk, food and beverage"; "callout operator"; and "surveillance systems
5  monitor." (A.R. 20.) Accordingly, the ALJ concluded that plaintiff has
6  not been under a disability, as defined in the Social Security Act, from
7  July 14, 2006, through the date of her decision. (A.R. 21.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of

---

[3] The ALJ found that plaintiff has at least a high school education and is able to communicate in English. (A.R. 20.)

Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims that the ALJ: (1) improperly evaluated plaintiff's credibility; and (2) improperly considered and rejected the opinion of his treating physician. (Joint Stipulation ("Joint Stip.") at 6-13, 17-20.)

///
///
///

**I.   The ALJ Failed To Give Clear And Convincing Reasons For Finding Plaintiff's Testimony To Be Not Credible.**

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 17.) Further, the ALJ cited no evidence of malingering by plaintiff. Accordingly, the ALJ's reason for rejecting plaintiff's credibility must be clear and convincing.

1    The ALJ stated that plaintiff's "statements concerning the
2 intensity, persistence and limiting effects of [his] symptoms are not
3 credible to the extent they are inconsistent with [the ALJ's RFC]
4 assessment." (A.R. 17-18.) Specifically, it appears that the ALJ found
5 plaintiff to be not credible because: (1) of alleged inconsistencies in
6 plaintiff's testimony regarding the side effects of his pain
7 medications; and (2) "by applying for job positions, [plaintiff]
8 believed he was capable of sustained work." (A.R. 19.)

10    The ALJ's first ground for rejecting plaintiff's testimony is
11 unpersuasive. In her decision, the ALJ rejects plaintiff's testimony
12 that his pain medications cause him to become sleepy and have
13 difficulties concentrating, because plaintiff has an "unusual sleeping
14 pattern." (A.R. 19.) The ALJ notes that "[plaintiff] is nocturnal and
15 stays up all night watching movies; he may be tired from not sleeping at
16 night. Although [plaintiff] said that he falls asleep during movies, it
17 is difficult to determine what is making him tired." (*Id.*) In
18 addition, the ALJ notes that plaintiff testified that he "used to take
19 Oxycontin which caused side effects of bruises/lesions to his arms and
20 memory problems; his doctor then changed his medication to Vicodin and
21 Valium because they did not cause any side effects." (*Id.*)

23    The fact that plaintiff has an "unusual sleeping pattern" is not a
24 clear and convincing reason for rejecting plaintiff's testimony
25 regarding the side effects of his medications. At the hearing,
26 plaintiff testified that he takes four Valium and four Vicodin per day
27 -- medications that could produce plaintiff's alleged side effects of
28 sleepiness and difficulty concentrating. (A.R. 34.) In addition, the

7

ALJ's statement that "it is difficult to determine what is making [plaintiff] tired" does not constitute a clear and convincing reason for finding plaintiff to be not credible. (A.R. 19; emphasis added.) In fact, to the extent the ALJ needed clarification regarding the cause(s) of plaintiff's sleepiness and difficulties concentrating, the ALJ should have developed the record.

Further, the ALJ's other reason for discrediting plaintiff's testimony regarding the side effects of his medications -- *to wit*, plaintiff's testimony that his "doctors changed his medication to Vicodin and Valium because they did not cause any side effects" -- is equally unpersuasive. (A.R. 19.) At the hearing, plaintiff testified that he used to take OxyContin, but he stopped taking it because it caused bruising. (A.R. 34.) After discussing the side effects of Oxycontin, the ALJ asked plaintiff whether he experienced "any side effects from the Vicodin or the Valium." (A.R. 36.) In response, plaintiff stated "[t]hat's unknown at this time." (*Id.*) Plaintiff then explained that, although he has stopped taking OxyContin, he "continue[s] to break out in lesions." (*Id.*) Plaintiff later testified that Vicodin and Valium cause him to become sleepy and have difficulties concentrating. (A.R. 51.)

Taken in context and fairly read, plaintiff's testimony was that Valium and Vicodin did not appear to be causing the same type of side effects (*i.e.*, lesions/bruising) as Oxycontin (A.R. 36), but he becomes sleepy and has difficulty concentrating when he takes Valium and Vicodin (A.R. 51). Accordingly, to the extent the ALJ attempts to discredit

plaintiff because he stated that he suffers "no side effects" from his medications, the ALJ's reasoning is unconvincing.

The ALJ also discredits plaintiff's testimony because plaintiff has applied for jobs, and according to the ALJ, such applications reflect plaintiff's belief that he is "capable of sustained work." (A.R. 19.) This reason for discrediting plaintiff is unconvincing. While it is true that plaintiff expressed a desire to work and applied for jobs at McDonald's and Blockbuster, plaintiff did not indicate that he was capable of *sustained* work. In fact, when asked by the ALJ whether he thought he could work an eight-hour day, plaintiff testified that he believed he could work part-time, four to six hours. (A.R. 41.) Plaintiff's belief that he can work part-time does not amount to a belief that he is capable of sustained work. As such, the ALJ's second reason for discrediting plaintiff's testimony is unavailing.

Accordingly, for the aforementioned reasons, the ALJ failed to give clear and convincing reasons for discrediting plaintiff's testimony.

**II. On Remand, The ALJ Should Revisit His Consideration Of The Various Medical Opinions.**

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing

9

physician's."  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(d), 416.927(d).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant. Magallanes, 881 F.2d at 751. When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)(as amended). When contradicted by another doctor, a treating physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id*.

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." Lester, 81 F.3d at 831; *see* Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990)(finding that the nonexamining physician's opinion "with nothing more" did not constitute substantial evidence).  However, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence." Andrews, 53 F.3d at 1041. Independent clinical findings include "(1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." Orn, 495 F.3d at 632 (internal citations omitted).

10

1    An ALJ "has a special duty to fully and fairly develop the record
2 and to assure that claimant's interests are considered." Brown v.
3 Heckler, 713 F.2d 441, 443 (9th Cir. 1983).  Pursuant to 20 C.F.R. §§
4 404.1512(e) and 416.912(e), the Administration "will seek additional
5 evidence or clarification from your medical source when the report from
6 your medical source contains a conflict or ambiguity that must be
7 resolved, [or] the report does not contain all the necessary information
8 . . . ."  *See* Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir.
9 1996)(noting that "[i]f the ALJ thought he needed to know the basis of
10 [the doctor's] opinions in order to evaluate them, he had a duty to
11 conduct an appropriate inquiry").

13    On August 17, 2006, approximately one month after plaintiff's
14 allegedly disabling slip and fall injury, Dr. Morris Senegor, a
15 neurosurgeon, began treating plaintiff.  (A.R. 244.)  In an August 17,
16 2006 initial examination, Dr. Senegor noted that, after the accident,
17 plaintiff began experiencing "low back pain, pain radiating along the
18 anterior thigh and knee, and pain in the anterior shin towards the ankle
19 and heel."  (*Id.*)  Dr. Senegor's musculoskeletal examination of
20 plaintiff revealed:  (1) normal muscle tone, gait, and "tip-toe and
21 heel-walking"; and (2) a negative straight leg raise test.  (*Id.*)
22 However, Dr. Senegor noted that plaintiff's "[r]ange of motion of the
23 lumbar spine [wa]s reduced to about 1/3 of normal." (*Id.*)  Dr. Senegor
24 also reviewed plaintiff's August 1, 2006 MRI scan of the lumbar spine
25 which showed:  "vestigial disc space between S1 and S2"; "degenerated
26 discs at L4-5 and L5-S1 with desiccation and partial loss of height";
27 "some facet hypertrophy and lateral recess stenosis at L4-5"; and "a
28 very large central, right paracentral disc herniation occupying almost

half of the spinal canal at L4-5." (A.R. 245.) Based on his physical examination of plaintiff and review of plaintiff's MRI, Dr. Senegor diagnosed plaintiff with "right sided lumbar radiculopathy secondary to a combination of stenosis and disc herniation on the right sight at L4-5." (*Id.*) Accordingly, Dr. Senegor renewed plaintiff's prescription for Vicodin and Soma and recommended that plaintiff attend physical therapy and "remain on disability until [Dr. Senegor] s[aw] him again." (*Id.*)

In an October 10, 2006 treatment note, Dr. Senegor stated that plaintiff's physical therapy had not helped and plaintiff's "symptoms remain nonradicular in that the pain is primarily in the low back." (A.R. 242.) Dr. Senegor further stated that plaintiff "remains incapacitated by the problem" and recommended that plaintiff have epidural steroid injections. (*Id.*)

In a January 18, 2007 treatment note, Dr. Senegor reported that, after having four epidural steroid injections, plaintiff experienced a 50% improvement in his condition. (A.R. 238.) However, in a March 6, 2007 treatment note, Dr. Senegor stated that plaintiff continued to experience "residual lumbar spine symptoms" despite receiving injections and taking Soma. (A.R. 236.) Dr. Senegor also noted that plaintiff reported difficulties finding a job due to his use of narcotic pain medications, and therefore, Dr. Senegor recommended that plaintiff take Tramadol, because "[i]f [it] works, [plaintiff] could drive a truck or be around machinery." (*Id.*)

///
///

12

On May 22, 2007, Dr. Senegor reviewed, *inter alia*, plaintiff's updated May 15, 2007 MRI scan. (A.R. 234.) Plaintiff's MRI scan showed: "L4-5 and L5-S1 disc degeneration in the form of partial collapse, desiccation, and bulging"; "no significant encroachment upon the neural structures"; and a "vestigial disc between S1 and S2." (*Id.*) Pursuant to Dr. Senegor's recommendation, on July 11, 2007, plaintiff underwent a combined anterior posterior fusion at L4-5 and L5-S1 with pedicle screw instrumentation, cage application, and bone morphogenetic protein. (*Id.*, A.R. 385.)

Post-surgery, Dr. Senegor reported that plaintiff still had pain in his lower back. (A.R. 255.) Dr. Senegor recommended that plaintiff begin increasing his activity level. (*Id.*)

In a September 13, 2007 treatment note, however, Dr. Senegor stated that plaintiff had twisted his back and "taken a turn for the worse." (A.R. 379.) Dr. Senegor noted that plaintiff appeared to be in more pain, "is slower," and "is still using a walker." (*Id.*) Dr. Senegor indicated to plaintiff that the pain "he is suffering is likely to be a temporary set back." (*Id.*) Accordingly, Dr. Senegor recommended that plaintiff "continue increasing his activities as his body allows." (*Id.*) Dr. Senegor also noted that plaintiff "does not appear ready for any physical therapy as of yet." (*Id.*)

On October 26, 2007, Dr. Senegor reported that plaintiff appeared "to be getting worse rather than better." (A.R. 372.) Specifically, Dr. Senegor noted that plaintiff "not only [has] low back pain but also has fairly severe sciatic pain radiating down the right leg all the way

13

towards the foot." (*Id.*) Dr. Senegor noted that plaintiff has been going through pain medication faster than expected and stated that "it is clear that [plaintiff]'s condition is worsening rather than getting better." (*Id.*) Dr. Senegor also noted that there appears to be a pain management problem and expressed concern that plaintiff "may have a neighboring level disc herniation or some other pathology that might explain the new symptoms." (*Id.*) He suggested that plaintiff have an MRI of the lumbar spine "to evaluate the cause of [his] radicular symptoms." (*Id.*) By December 17, 2007, plaintiff, according to Dr. Senegor's treatment notes, was experiencing "a good deal of low back pain" and taking Vicodin and Percocet for his pain. (A.R. 364.)

In an April 15, 2008 letter, Dr. Senegor stated that plaintiff "has residual low back and right leg pain and remains on strong narcotic medications and other pain relievers including Percocet, Vicodin, and Valium on a daily basis." (A.R. 361.) Dr. Senegor opined that plaintiff was "permanently disabled [from] engaging in gainful employment. His restrictions include no lifting over 10 pounds, no excessive bending, twisting, or stooping, and no continuous sitting or standing over 20 minutes at a time." (*Id.*)

In a Spinal Impairment Questionnaire completed on that same date, Dr. Senegor stated that plaintiff has lumbar disc degeneration at the L4-5 and L5-S1 levels and is "permanently disabled." (A.R. 326.) Dr. Senegor noted that plaintiff has: limited range of motion in his lumbar back region; abnormal gait; and a positive straight leg raising test. (A.R. 326-27.) Dr. Senegor further opined that plaintiff could sit and stand/walk for 0-1 hours in an eight-hour day but would need to get up

14

1  and move around every 20 minutes for 20 minute intervals; could lift 0-5
2  pounds frequently and 5-10 pounds occasionally; could carry 0-5 pounds
3  frequently and 5-10 pounds occasionally.  (A.R. 229-330.)  Dr. Senegor
4  further opined that plaintiff would likely miss work more than three
5  times a month as a result of his impairments or treatment and that
6  plaintiff's pain or other symptoms would constantly interfere with his
7  attention and concentration.  (A.R. 330-31.)

9      A May 8, 2008 office message for Dr. Senegor stated that plaintiff
10 "needs to get re-cert[ified] for commercial driving. [Plaintiff] states
11 [his other physician] will re-certify him if he gets an ok from Dr.
12 Senegor.  The ok must state his back surgery will not impact abilities
13 to drive commercial vehicles."  (A.R. 358.)  On May 12, 2008, Dr.
14 Senegor authored a letter stating that plaintiff "underwent a lumbar
15 fusion at the L4-5 and L5-S1 levels on 07/11/07 for lumbar degenerative
16 disc disease from which he has recuperated enough now that he can engage
17 in driving of commercial vehicles."  (A.R. 357.)

19     In her decision, the ALJ apparently rejects the opinion of Dr.
20 Senegor in favor of that of non-examining, State Agency medical
21 consultant Antoine G. Dispia, M.D., because:  (1) "other medical
22 evidence does not suggest the level of severity opined by Dr. Senegor";
23 and (2) "Dr. Senegor's medical opinions are contradictory and
24 inconsistent."  (A.R. 18-19.)

26     The ALJ's first reason for rejecting Dr. Senegor's opinion -- *to
27 wit*, that the medical evidence does not support the level of impairment
28 to which Dr. Senegor opined -- is unpersuasive.  In support of her

statement, the ALJ notes that "Dr. [Oscar N.] Abeliuk, [a neurologist] who performed an Agreed Medical Evaluation on June 26, 2008, found that [plaintiff]'s range of motion in the cervical spine, thoracic spine and shoulders were within normal limits." (A.R. 18-19.) The ALJ further notes that while Dr. Abeliuk found "tenderness and radiculopathy . . . , these findings [we]re not sufficient to suggest a level of functional impairment indicated by Dr. Senegor." (*Id.;* internal citations omitted.)

Contrary to the ALJ's finding, Dr. Senegor's opinion is not inconsistent with Dr. Abeliuk's findings. Like Dr. Abeliuk, Dr. Senegor did not find any limitation with respect to plaintiff's shoulders and/or cervical and thoracic spine. Rather, as properly noted by plaintiff, Dr. Senegor found plaintiff to be limited, *inter alia*, in his lumbar spine -- a finding which, although not mentioned by the ALJ, was echoed in Dr. Abeliuk's evaluation of plaintiff.[4] (*See, e.g.,* A.R. 348 -- finding restricted lumbar spinal range of motion.) Further, to the extent the ALJ rejects Dr. Senegor's opinion because Dr. Abeliuk's findings do not "suggest [the] level of functional impairment indicated by Dr. Senegor," the ALJ's reasoning is unavailing, because Dr. Abeliuk did not complete a functional assessment for plaintiff. Accordingly, it is unclear whether Dr. Abeliuk's findings would or would not suggest the level of functional impairment indicated by Dr. Senegor.[5] As such, the

---

[4] In fact, like Dr. Senegor, Dr. Abeliuk recommended that plaintiff have an additional "MRI of the low back . . . in view of his constant pain in the low back with radiculopathy clinically." (A.R. 350.)

[5] While it is true, as noted by the Commissioner, that Dr. Abeliuk opined that plaintiff has not reached "permanent and stationary status," in reaching this finding, Dr. Abeliuk noted that he did not

ALJ's first reason does not constitute a specific and legitimate reason, as required, for rejecting the opinion of Dr. Senegor.

In support of her second reason for rejecting Dr. Senegor's opinion -- *to wit*, that Dr. Senegor's opinions are inconsistent and contradictory -- the ALJ compares Dr. Senegor's April 15, 2008 assessment to his May 12, 2008 letter. As noted by the ALJ in her decision and as discussed in detail *supra*, in the April 2008 assessment, Dr. Senegor found plaintiff to be "permanently disabled" and "severely limited in his ability to sit, stand, and walk." (A.R. 18.) However, approximately one month later, in his May 12, 2008 letter, Dr. Senegor stated that plaintiff had recuperated sufficiently to engage in the driving of commercial vehicles. (*Id.,* A.R. 357)

Notwithstanding plaintiff's belief that Dr. Senegor's May 12, 2008 letter was an anomaly and an attempt "to help his patient at least attempt to resume [part-time] work," there appears to be an inconsistency between Dr. Senegor's two statements. (Joint Stip. at

---

have an opportunity to review all of plaintiff's medical records. (A.R. 350.) Specifically, Dr. Abeliuk stated:

> I look forward to reviewing the entire record of this patient, which should include the MRI studies performed, with not only the reports but also the films, the surgical procedure by Dr. Senegor, and the entire records from Dr. Senegor. Very few pages of records that correspond to care performed by Dr. Senegor were submitted for my review, despite the fact that our office waited several weeks after the evaluation was performed.

(*Id.*) As such, it does not appear that Dr. Abeliuk's opinion is informed by a complete review of the then-available medical record. *See* 20 C.F.R. §§ 404.1517, 416.917 (requiring that the consultative examiner be provided with "any necessary background information about [claimant's] condition").

10.) Even assuming *arguendo* that this apparent inconsistency constitutes a specific and legitimate reason for rejecting Dr. Senegor's opinion, it appears that the only functional assessment upon which the ALJ relies in determining plaintiff's RFC -- *to wit*, that of State Agency medical consultant Dr. Dispia -- is not based upon a sufficiently complete picture of plaintiff's condition. Significantly, Dr. Dispia's functional assessment is based only upon plaintiff's medical records from June 19, 2006, through July 11, 2007, and does not take into account plaintiff's "turn for the worse" beginning in September 2007. Further, it does not appear that Dr. Dispia based his opinion on any medical finding or testing that Dr. Senegor had not considered himself.

Accordingly, as this case is being remanded for the reasons set forth *supra*, the ALJ should revisit his consideration of the various medical opinions on remand.[6] In so doing, the ALJ may determine that a consultative examination, based upon a *complete* review of the medical record, is appropriate under the circumstances.

**III. Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise

---

[6] Additionally, to the extent necessary, the ALJ should develop the record further to resolve any conflict or ambiguity with respect to the opinions contained in Dr. Senegor's April 15, 2008 assessment and his May 12, 2008 letter.

this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) (remand appropriate to remedy defects in the record). On remand, the ALJ must correct the above-mentioned deficiencies and errors and further develop the record as appropriate. After doing so, the ALJ may need to reassess plaintiff's RFC, in which case additional testimony from a vocational expert likely will be needed to determine what work, if any, plaintiff can perform.

///
///
///
///
///
///
///
///
///

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: May 9, 2012

*Margaret A. Nagle*

MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE